IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 06-cv-01998-MSK-MJW

ERMIN ABEYTA,

    Plaintiff,

v.

PROGRESSIVE SPECIALTY INSURANCE COMPANY, an Ohio Corporation,

    Defendant.

---

**OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

---

**THIS MATTER** comes before the Court pursuant to the Defendant's Motion for Summary Judgment **(# 22)**, the Plaintiff's response **(# 32)**, and the Defendant's Reply **(# 33)**; and the Plaintiff's Motion to Amend the Complaint **(# 24)**, the Defendant's Response **(# 28)**, and the Plaintiff's reply **(# 31)**.

## FACTS

The facts of this case are not in material dispute. At some point prior to 2000, the Plaintiff procured an auto insurance policy from the Defendant. It is apparently undisputed that, originally, the policy did not comply with the then-existing Colorado Auto Accident Reparations Act ("CAARA"), C.R.S. § 10-4-701 *et seq.*, insofar as the policy did not offer enhanced Personal Injury Protection ("enhanced PIP") coverage – that is, coverage permitting benefits for wage loss and medical expenses that were unlimited in time and dollar amount – as required by statute. Specifically, the original policy did not provide for wage loss or medical expense coverage that

1

was unlimited in time. At some point in time, the Defendant became aware of the defects in its policy language, and issued an endorsement that cured the defect. However, the Plaintiff alleges, and it appears to be undisputed for purposes of this motion, that the Defendant never provided the Plaintiff with the opportunity to purchase additional coverage under the new endorsement.

On March 30, 2000, the Plaintiff was involved in an auto accident and suffered significant physical injuries. The Defendant made payments to him pursuant to the terms of his policy, and on January 9, 2002, the Defendant advised the Plaintiff that he had exhausted the benefits available to him under the terms of his policy. At some point in 2002, the Plaintiff retained an attorney to represent him in a personal injury case brought against the other driver involved in the accident. There is some dispute between the parties as to whether the Plaintiff's attorney's duties extended to attempting to secure maximum benefits from the Defendant as well, or whether his role was limited to representing the Plaintiff in a claim against the other driver, but it is undisputed that the Plaintiff's attorney had discussions with the Defendant with regard to the benefits that the Plaintiff had received under the policy as they related to the claim against the other driver.

The Plaintiff commenced the instant action on or about March 29, 2006, in the Colorado District Court for Teller County. The Complaint **(# 2)** alleges four claims for relief: (i) a request for reformation of the policy to include enhanced PIP benefits pursuant to *Brennan v. Farmers Alliance Mut. Ins. Co.*, 961 P.2d 550, 554 (Colo. App. 1998), among others; (ii) a contingent claim for breach of contract, insofar as the Defendant failed to pay benefits that would be required under the policy as reformed; (iii) a contingent claim for "wanton and willful statutory bad faith," insofar as the Defendant willfully failed to pay benefits that would be required under the policy as

reformed, in violation of C.R.S. § 10-4-708; and (iv) a contingent claim for "common law bad faith," on essentially the same facts as the statutory bad faith claim.

The Defendant now moves for summary judgment **(# 22)**, arguing that the Plaintiff's Complaint is untimely. Specifically, the Defendant argues that claims for reformation of policies under CAARA are subject to a three-year statute of limitations under C.R.S. § 13-80-110(1)(j), and that the Plaintiff's claims accrued no later than January 9, 2002, the date that the Defendant advised the Plaintiff that he had exhausted his available benefits. In response **(# 32)**, the Plaintiff argues that: (i) the statute of limitations was tolled until some unspecified date, based upon the Defendant's fraudulent concealment of the fact that its policy failed to comply with CAARA; (ii) that the cause of action did not accrue until some unspecified date when the Plaintiff learned of his right to bring the claims; and (iii) that the statute of limitations is tolled by the pendency of a class action in *Soto v. Progressive Mountain Ins. Co.*, ___ P.3d ___, 2007 WL 2128189 (Colo. App. 2007), and that Defendant Progressive Specialty Ins. Co. is an alter ego of Progressive Mountain Ins. Co., the defendant in the *Soto* suit.

Separately, the Plaintiff moves **(# 24)** to amend the Complaint to add a single sentence to one of the factual allegations. The sentence to be added reads "Said failure to notify and instead to actively conceal from Mr. Abeyta his entitlement to a reformed insurance policy constitutes fraudulent and intention [sic] concealment, which thereby tolls any statute of limitations that might otherwise apply to the facts." The Defendant opposes the Plaintiff's request to amend, contending that the proposed amendment is futile.

## ANALYSIS

### A. Summary Judgment Motion

#### 1. Summary judgment standard

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(e). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material

fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

### 2. Timeliness of claims

Here, the Defendant bears the burden of proof at trial on its defense of the statute of limitations, and thus, it has the burden here of establishing every element of that defense by sufficient evidence. It is undisputed that the Plaintiff's claims are governed by a three-year statute of limitations. *Nelson v. State Farm Mut. Auto Ins.*, 419 F.3d 1117, 1120 (10th Cir. 2005). The Defendant contends that the Plaintiff's claims accrued no later than January 9, 2002, as a result of the Plaintiff's receipt of the Defendant's notification that he had exhausted his PIP coverage as of that date. In dicta in *Nelson*, the 10th Circuit suggested that the proper accrual date for a CAARA claim was, at the latest, the date upon which the insured exhausted the basic PIP coverage. 419 F.3d at 1121. At that point, the insured is aware that the insurer has neither offered nor supplied him with enhanced PIP coverage. *Id.*

The Plaintiff argues that *Nelson* does not actually address the accrual date in a case such as this one, where the insurer fails to make enhanced PIP coverage available, or to explain it to the insured at the time of purchase or accident. The Plaintiff's purported distinction is without merit. The factual recitation in *Nelson* makes clear that the insured there was not offered enhanced PIP at the time he purchased his policy, 419 F.3d at 1119, and there is nothing in that decision to suggest that the insurer explained enhanced PIP coverage to the insured at any time, much less any indication that the 10th Circuit relied on such an explanation in deciding when the

5

claim accrued.[1]  *Nelson* makes clear that the accrual date in a CAARA case is "when [the insured] knew or should have known that [the insurer] had not offered him extended PIP benefits." *Id.* at 1121.

The Plaintiff was on notice that he was not offered enhanced PIP coverage as of January 9, 2002, when he was advised that his PIP coverage had been exhausted.  Thus, the Plaintiff knew or should have known that he was not going to receive coverage unlimited in time or dollar amount once he was advised that he had exhausted his coverage despite his ongoing injuries.  Because the Plaintiff had such knowledge as of January 9, 2002, it is clear that this action was not filed within the 3-year statute of limitations.

> 3. <u>Fraudulent concealment</u>

The Plaintiff offers two arguments for tolling the statute of limitations.  First, he argues that the Defendant fraudulently concealed the fact that it had failed to offer a statutorily-compliant policy, and thus, that the statute of limitations should be tolled until the Plaintiff discovered that fraudulently-concealed fact.  The Plaintiff is correct that Colorado law permits a statute of limitations to be tolled on the grounds of fraudulent concealment when five elements are shown:

---

[1]Although it is not presented as a well-formed argument, it appears that the Plaintiff may be contending that this case differs from *Nelson* insofar as here, the Defendant not only did not <u>offer</u> him the option to purchase enhanced PIP coverage, but that the terms of the Defendant's standard policies made it impossible for the Defendant to <u>sell</u> such coverage in any event.  (In *Nelson*, there was apparently no dispute that the insurer <u>had</u> enhanced PIP coverage to sell, only that it failed to advise the insured of that fact.)   Even assuming that there is some merit to such a distinction – and the Court finds none – this argument loses any vitality it might have had once it is conceded that the Defendant subsequently made available an endorsement that cured the errors in the standard policy language, thereby making enhanced PIP coverage available for purchase.  Although it is undisputed for purposes of this motion that the Defendant never advised the Plaintiff of the endorsement, it is also undisputed that the endorsement existed, and thus, the case returns to the identical factual situation presented in *Nelson* – that the coverage was available, just not offered to the insured.

6

(i) that the defendant concealed a material fact that equity required to be disclosed; (ii) that the defendant knew that the fact was being concealed; (iii) that the plaintiff did not know of the fact; (iv) that the defendant intended that the concealment be acted upon; and (v) that the plaintiff acted in ignorance of the concealed fact to his detriment. *Smith v. Boyett*, 908 P.2d 508, 516 (Colo. 1995). However, the Plaintiff has not articulated (much less cited to evidentiary material supporting) facts that would warrant application of the fraudulent concealment doctrine here.

The Plaintiff appears to argue that the "fact" being concealed by the Defendant is the Defendant's failure to offer enhanced PIP coverage in accordance with the statutory requirements. The Court has some difficulty conceiving of how the failure to make an offer constitutes a "fact" that can be concealed – at best, the Plaintiff's argument appears to be that the Defendant concealed from the Plaintiff the "fact" that the law required it to offer the Plaintiff enhanced PIP coverage. Assuming that the statutory requirement that the Defendant offer enhanced PIP coverage is a "fact" that equity required the Defendant to disclose to the Plaintiff, the Plaintiff still has not come forward with facts that show, directly or by implication, that the Defendant <u>knew</u> that it was concealing this fact from the Plaintiff. The Plaintiff points to nothing in the evidence that would suggest that the Defendant's failure to make the statutorily-required offer was anything other than merely a negligent oversight, nor that the Defendant was ever aware of the fact that no such offer had been extended to the Plaintiff. *See Smith*, 908 P.2d at 514 n. 13. Moreover, the Plaintiff cites no evidence that would suggest, directly or by inference, that the Defendant <u>intended</u> that the Plaintiff select a policy without being aware of the opportunity to purchase enhanced PIP coverage, or that the Defendant intended the Plaintiff to rely upon the "concealment."

7

Even if the Cour tw ere to assume that the Plaintiff is correct that the doctrine of fraudulent concealment should be applied to toll the statute of limitations, that toll should not be extended beyond either January 9, 2002, when the Defendant advised the Plaintiff that his available PIP coverage had been exhausted, or later in 2002, when the Plaintiff retained a lawyer to make a claim against the other driver. The January 9, 2002 letter notifying the Plaintiff that his benefits were exhausted essentially placed the burden on the Plaintiff to inquire whether there was some additional coverage available; this, in turn, placed him on constructive notice of the requirements of CAARA. The Court is mindful that laypeople may not have the insight or knowledge to conceive of and perform such an inquiry, but that is little justification for creating an otherwise open-ended toll that might permit CAARA claims to be brought years or decades after the insurer has fully discharged the policy's stated terms.

Moreover, regardless of whether the toll should have expired in January 2002, it is clear that it definitively expired by October 2002, when the lawyer retained by the Plaintiff apparently completed his services. Although there is some dispute as to the precise scope of the representation that the lawyer provided, the Plaintiff admits in his deposition that one of the reasons he hired the lawyer was "to get all benefits from Progressive that [the Plaintiff] thought [he] should have had." *Docket* # 22 -2 at 2, 3.[2] Thus, by the end of October 2002, the Plaintiff can no longer demonstrate that he was unaware of any "fact" that the Defendant had concealed, as the Plaintiff is charged with the knowledge that his attorney had or should have had regarding

---

[2]The Defendant's submission of all of the exhibits supporting its summary judgment motion as a single, 50-page docket entry violates § V.H.3 of the Court's Electronic Case Filing Procedures. Those procedures state that "Each exhibit referenced in a pleading, motion, brief or other electronic filing . . . shall be submitted to ECF as a separate ECF attachment to the main document." (Emphasis added.)

8

CAARA's requirements. Even if the Court were to equitably toll the statute of limitations to October 2002, the date upon which the attorney apparently concluded his representation of the Plaintiff,[3] the Plaintiff's commencement of this action in March 2006 is still untimely by well over six months.[4]

4. Class action toll

The Plaintiff's sole remaining argument is that he is entitled to a tolling of the statute of limitations as the result of the certification of a class action in the *Soto* case. The Plaintiff concedes that the defendant in the *Soto* case is not Progressive Specialty Ins. Co., the named Defendant here, but rather, Progressive Mountain Insurance Co., a nominally distinct entity. The Plaintiff contends that the operations of both entities are so co-mingled as to blur any distinction between them.

At the outset, the Court finds this argument to be factually misleading. The Plaintiff here cites the Class Certification Order in *Soto* as approving a class consisting of "All residents of the State of Colorado who were Progressive insureds . . .where the policyholder was not offered extended coverage as required by [CAARA]." However, the actual Class Certification Order

---

[3]October 2002 is identified by the Plaintiff as the date on which he settled his claim against the other driver involved in the accident. The record reflects that the Plaintiff's attorney was involved in discussions with the Defendant much earlier. Indeed, the January 9, 2002 letter advising the Plaintiff that he has exhausted his PIP coverage is specifically addressed to the Plaintiff's attorney.

[4]This is entirely consistent with the decision in *Kavka v. State Farm Mut. Auto. Ins. Co.*, D. Colo. Case No. 04-N-483, upon which the Plaintiff relies. In *Kavka*, Judge Nottingham applied the fraudulent concealment doctrine to toll the statute of limitations from the date the insured was notified, post-accident, of her available basic PIP coverage to the date she learned from her attorney that enhanced PIP coverage was required to be offered. Although this Court does not necessarily agree with all of the reasoning in *Kavka*, it notes that even *Kavka* ended the fraudulent concealment toll once the insured obtained legal advice about her insurance coverage.

9

makes clear that the *Soto* court's use of the term "Progressive" is limited to the class proposed by the plaintiffs in that case, namely "All residents of the State of Colorado who are insured under a <u>Progressive Mountain Insurance Co. ("Progressive")</u> auto insurance policy . . . ." *Docket # 32-5 at 2* (emphasis added). Thus, the Plaintiff's contention that he is a member of the class certified in *Soto* is patently false, as it is undisputed that the policy he obtained was not issued by Progressive Mountain Ins. Co. For this reason alone, the argument that the statute of limitations should be tolled as a result of *Soto* fails.

The Plaintiff also suggests that several insurers using variations of the name "Progressive" operate as functional alter egos because of the "blurred distinction between the Progressive companies." In support of this assertion, the Plaintiff makes the conclusory assertion that "the specimen documents used by Progressive reflect no distinction between the various companies, as any Progressive policy holder receives the same documents regardless of the company involved." No evidentiary support is offered for this proposition, and thus, the Court does not consider it. *BancOklahoma Mort. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1097 (10th Cir. 1999) (party opposing summary judgment cannot rest on conclusory assertions in pleadings); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (assertions that an issue of fact exists must be supported by pointing to specific evidence in the record). The only supporting evidence the Plaintiff refers to is the testimony of Cathryn Richards, who is identified in her deposition only as an "employee of Progressive" and responsible for adjusting claims. Asked whether she was aware that there were "a couple of different Progressive entities" including Progressive Mountain and the named Defendant here, Progressive Specialty, Richards responded "I may have been then. I'm not now. I don't recall." *Docket # 32-6 at 2*. Asked whether the claims she was handling during

her employment were "claims for all" of these entities, Richards responded "I can tell you that I was handling PIP claims for Progressive, who did– would those be the underwriters or I'm not sure what the phrase is. Anyway I wouldn't – I wouldn't – I don't know." She stated she could not recall whether she would have known whether "it was one entity versus the other" and testified that "it would mean nothing to me" to know whether a claim she was handling was a "Progressive Specialty claim . . . versus any other type of Progressive company." *Id.*

Colorado law recognizes that corporate distinctions may be disregarded and the corporate veil pierced where corporate entities are merely alter egos of each other and the corporate structure is used to perpetuate a wrong. *See generally In re Phillips*, 139 P.3d 639, 644 (Colo. 2006). Alter ego relationships exist when one entity is a "mere instrumentality" for the transaction of another's affairs and where there is "such unity of interest" that the separate corporate identities no longer exist. *Id.* In considering whether an alter ego relationship exists between two or more corporate entities, the Court considers factors such as: (i) whether one entity owns all or the majority of the capital stock of the other; (ii) whether the entities have common directors or officers; (iii) whether one entity finances the other; (iv) whether one entity has grossly inadequate capital; (v) whether one corporation pays the salaries or expenses of the other; (vi) whether one entity has no substantial business operations except with the other; (vii) whether formal legal requirements of each are observed independently, and so on. *Great Neck Plaza, L.P. v. Le Peep Restaurants, LLC,* 37 P.3d 485, 490 (Colo. App. 2001).

The uncertain and ambiguous testimony of Richards is insufficient to raise a genuine issue of fact with regard to whether Defendant Progressive Specialty Ins. Co. is the alter ego of Progressive Mountain, such that the class certification in *Soto* should be deemed to include the

11

Plaintiff. Richards' testimony gives no indication of who Richards' nominal employer was, much less define the extent of her duties or indicate whether she is competent to testify as to any of the factors that the Court must consider in assessing an alter ego relationship. Moreover, even if Richards' testimony can be read in any way that might shed light on the alter ego issue here, it is insufficient, of itself, to allow the Court to consider any of the factors listed above. Even with Richards' testimony, the Court cannot identify the owners, directors, or officers of the Defendant and Progressive Mountain (much less whatever "Progressive" entity employed Richards), the manner in which those various entities were formed, the services they provide, the manner in which they carry out their operations, or any of the other numerous indicia of alter ego status. At best, the Plaintiff has "spotted" a potential alter ego issue, but has failed to come forward with evidence that would demonstrate that a genuine issue of fact exists as to whether the Defendant is the alter ego of Progressive Mountain. As a result, the Court rejects the Plaintiff's argument that the class certification in *Soto* warrants tolling the statute of limitations here.

Accordingly, the Court finds that the Defendant has carried its burden of demonstrating that the Plaintiff's claims are untimely, and the Plaintiff has failed to come forward with evidence of a genuine issue of material fact bearing on the timeliness of his claims. The Defendant's Motion for Summary Judgment is granted.

**B. Motion to Amend**

Leave to amend a pleading is to be "freely granted." Fed. R. Civ. P. 15(a). The Court should only deny leave to amend where it finds bad faith, undue delay resulting in prejudice, or where the new claims sought to be added are futile. *Beerheide v. Zavaras*, 997 F.Supp. 1405, 1409 (D. Colo. 1998), *citing Foman v. Davis*, 371 U.S. 178, 182 (1962).

The Court has some doubt as to whether amendment of the Complaint to assert the fraudulent concealment theory is necessary, as the proposed amendment does not assert any new facts and merely iterates the Plaintiff's theory in opposition to an affirmative defense raised by the Defendant. Nevertheless, for the reasons stated herein, the Court finds that the fraudulent concealment theory is insufficient to render the Plaintiff's claims timely. Thus, even if the Plaintiff were to amend the Complaint as requested, the amendment would be futile in that it would not prevent summary judgment being granted to the Defendant. Accordingly, the Motion to Amend is denied as futile.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion for Summary Judgment **(# 22)** is **GRANTED**, and the Complaint is **DISMISSED** in its entirety as untimely. The Plaintiff's Motion to Amend the Complaint **(# 24)** is **DENIED**.

Dated this 16th day of January, 2008

**BY THE COURT:**

*/s/ Marcia S. Krieger*

Marcia S. Krieger
United States District Judge